Morning. Judge Joe Pryor and I are delighted to have Judge Richard Tallman with us this week visiting from the Ninth Circuit. Judge Tallman is here for the whole week and he came all the way from Coeur d'Alene, Idaho to help us decide these cases. I appreciate your help on these cases this week, Judge. Thanks for having me. And we have four on the docket this morning. And the first is Adelina McCulley and others versus Detective Jeffrey Jones. Mr. Maddox is here for the appellant. Mr. Trone for the appellee. Ready to proceed, Mr. Maddox? Yes, I am, Your Honor. Good morning, Your Honors. May it please the Court. Welcome to the first day of May. It's an honor to be in front of you all. This Court should reverse the 12b-6 ruling on the motion by the District Court because the District Court improperly made inferences against the plaintiff. As this Court well knows, in Iqbal and Twombly, the standard is plausibility and the Court is required to take the plaintiff's best case. In this particular instance, the Court grabbed on to qualified immunity and found favorable inferences for the defendants and violated well-established precedent that the Court is not to make credibility determinations, the Court is not to look into the facts beyond well-pled, reasonably inferenced facts that the plaintiff has asserted. Counsel, isn't this essentially an evaluation of the affidavit in support of the search warrant? Isn't that the heart of your case here? In essence, yes, but more than that, it's also an assessment of our complaint. Our complaint has factual affirmance that established that there were ongoing circumstances beyond the affidavit that suggests that it was obtained with recklessness, with disregard for pertinent information. The most important thing, Judge Tauman, that they left out was the fact that the investigation started with an individual named Donald Mosley. That individual led them to believe that he had stolen the citrus trailers and then brought them to my client's property to be salvaged as scrap metal. But you're not denying that 37 trailers were ultimately processed through your client's scrapyard, are you? No, but the critical inference here that needs to be drawn in favor of the plaintiffs is that Mr. Mosley specifically said that while I stole the trailers, they had no idea that I'd stolen them. I brought them there. The most he ever brought in one day was two trailers, and the affidavit tries to rely on the fact that there are some statutes that they may have not followed. However... Judge Lozada says, well, did the detective have to accept as true the allegations of a thief? And that is a point that when you're looking at what he said, yes, because it's plausible that he was telling the truth, plausible to the point that, as we pointed out in the record, that they were relying on him. If you look, I believe it's page 107. His plea agreement says he has to tell the truth in accordance with the statements. One of those statements is what he relied on in his affidavit. We said recently in our Paez v. Mulvey case that so long as it's reasonable to conclude from the body of evidence as a whole that a crime was committed, the presence of some conflicting evidence or a possible defense will not vitiate a finding of probable cause. So the fact that there's possibly contrary evidence from this witness does not mean that there still wasn't arguable probable cause in this case, right? No, because in addition to the probable cause issue of weighing the evidence, which one of our issues is that he shouldn't have done the weighing of the evidence, meaning Judge Lozada, if you look at Waite v. Kubler, which we cited, we do not weigh conflicting evidence or make credibility determinations. When Judge Wilson says, well, isn't he allowed to just say, I can disregard that, that's a credibility determination. And it's a substantial one, because if they did not know, which the co-defendant said they did not know, then the whole case is for naught, because the answer and knowledge is the fundamental of any crime. These strict statutes about, well, if you're a secondary metal recycler, you should have gotten these papers. Well, we pled that this detective had particularized knowledge. He had knowledge about these statutes. He'd actually trained in May of 2011, several years before, people in the salvage community. And so his knowledge... He should have conducted a more thorough investigation that would have led to the exoneration of  No, he should have given the gatekeeping circuit court judge the information necessary to tell him, you should go do more because we don't have enough. He did not even identify the roles of my clients. So particularly another problem with the district court's analysis is he lumps them all together. For example, take Mr. Richmond. He was the scale operator. So all he did was weigh these trailers. There's no statements about his management role. There's no statements about his knowledge of these statutes. And they gave free interviews. Another inference that can be favorably drawn to the plaintiff, that plaintiffs, that they're not hiding anything. They have pictures of these trailers. They have paperwork related to the trailers. When they did an administrative inspection, they let them come in, they made statements, and then... There just has to be arguable probable cause in the affidavit. If he knew that the trailers were stolen, he knew that there were no certificates of title, he knew they were purchased at below market value, they were cut up into scrap metal, the plaintiffs didn't collect any paperwork. It seems like that ought to be enough to establish maybe not probable cause, but arguable probable cause, which is all that is required in order for him to be entitled to qualified immunity. The problem is that the blending of the qualified immunity analysis coupled with the Iqbal Twombly standards, you have to take the plaintiff's best case at 12B6. We should be allowed to do discovery in this case because there are numerous factors going to the He did not say, Your Honor, you point out that they're below market value. There's nothing in these affidavits to say where he came up with the market value. Then, as the defendants argue in their brief, well, this was a profiteering... The problem with that analysis is he doesn't say what they purchased them for, and he doesn't say what level they were coming into the salvage yard. So there's a lot of missing details that one can't just assume to support qualified immunity. Well, what is your best case to suggest that the officer had to include in his affidavit all of these details that you're talking about? Because he charged for three different crimes. He charged the failure to have the documents. He charged grand theft, and he charged the organized dealing stolen property. There's not a single vermin in these affidavits to suggest these people colluded. It has to be organized. The pattern is that they had volume, but that's not a pattern when you have to have knowledge and people have to connect. What do you do with the fact that all the trailers were cut up so that their VIN numbers could not be traced back to the original trailers? Well, that's an assumption against the plaintiffs that should not be made. We also pled in paragraph... ...that everything was scrapped in a way that would frustrate any effort to establish title to these vehicles. Your Honor, that's an important point. If you look at paragraph, I think, 36 or 37 of our complaint clearly says these were missing tires. There were dilapidated pieces of equipment. The law addresses derelict vehicles as well. You got to do paperwork on those too, don't you? Yes, but there are also issues within Florida law that we should be able to get into in discovery that were not part of the affidavit about operability. But I'm not sure you're answering my question. I mean, as I read this affidavit and the availments, essentially, the theory here was that this scrapyard was operating like a chop shop had we been dealing with automobiles. And the fact that 37 trailers were delivered, that no paperwork was completed, and that they were all immediately cut up into pieces to prevent any efforts down the road to trace them back is certainly strong evidence to support that there was arguable probable cause here, isn't it? No, because they are a scrapyard. So, for example, when you look at the affidavit, he finds it incriminating that they call them trailers. Well, they are trailers. If I had an inoperable motor vehicle and brought it in, I would call it a car. But your clients referred to them as trailers when the detective interviewed them. Correct, because they are trailers. But if you look at the status of the property, they look like trailers, but that doesn't mean they're functional and operable. And in fact, we pled that they weren't. So when you take and come back to... But doesn't that make them derelict and therefore subject to that portion of the statute requiring that the paperwork be completed before they're destroyed? Two things on that. Assuming that you're right, that they had to do the paperwork. Okay, the statute that they cite says at the beginning of the statute, knowingly. So if they were just ignorant operators of this complex scheme, then he needs evidence of their knowledge. This is not a strict liability statute where if you don't have the paperwork, you're just guilty of committing an offense. You have to knowingly. There's nothing in the affidavit, Your Honor, showing that they knowingly tried to circumvent these laws. In fact, when they make a statement acknowledging that they don't have any additional paperwork, it just shows that they didn't know. So a reasonable inference in favor of the plaintiffs would be that they did not know. And if they did not know, all these affidavits fall. Go ahead. What do we do with the fact that one of your defendants pled guilty? That's actually fairly easy, Judge, because while I missed it when I briefed the case, if you read the affidavits, the one paragraph, because they're all the same affidavit, okay, the one paragraph that's different for Clarence McCulley is actually placed in Adelina McCulley's. And that is another factor that could go in our favor. It's in the wrong affidavit. I'm not sure you're answering my question. If he pled guilty, doesn't that defeat his claim of malicious prosecution? No, because... Or am I missing something in the law? No, because you can bifurcate these and we actually pled that in our complaint that that is a different offense. They're charged, the composite matrix of these affidavits deals with an organized scheme to, as you said, chop them up. Where did he plead guilty to? I'm sorry? Where did he plead guilty to? It was a misdemeanor of trans... There's not a single felony conviction out of this. It was a misdemeanor involving transferring one of the trailers without a title. So they didn't even scrap it. So it's a completely different issue. It's a trailer that remained intact that he turned around and sold and supposedly should have had a motor vehicle title. You mentioned that there are three different crimes that the plaintiffs were charged with. Is that correct? Three, except for him who had four. Yes, ma'am. If we find that there was arguable probable cause for each plaintiff to support one crime, does there need to be arguable probable cause with respect to all of the crimes? I think that's a very difficult issue for the plaintiffs, and I would answer no. I think that if you find arguable probable cause for any of the crimes that they charged, then I think that you would have to say that there's qualified immunity. Thank you. I would just point out that they did drop all of the grand thefts for all of these, and I'd appreciate a few more minutes to argue, even though I went over them. I apologize. All right. Thank you. We'll hear from Mr. Truong. Good morning. I'm John Truong from Lakeland, Florida. Thank you for listening to me today. I represent Detective Jeffrey Jones in the Poole County Sheriff's Office, and I ask that you affirm the decision from Judge Lozera below. The thrust of the appellant's argument, as shown in their brief, is that there was some relevant information that was left out of the affidavit, and that is not sufficient to defeat arguable probable cause. What if it was intentionally left out of the affidavit? If it was intentional and they knew it was exculpatory, such as a lab report that was in the Kelly case, where an officer was aware that there was an exculpatory lab report and intentionally left that out, then that would defeat probable cause. But we don't know that because we didn't get past the pleading stage. We're not here reviewing a summary judgment. We're reviewing a 12B6 dismissal. The officer's deposition hadn't been taken yet, has it? No, it hasn't, Your Honor. Well, isn't it possible that his deposition could be taken, and we could learn later that he intentionally left out the affidavit? Isn't that possible? It's possible, but it wasn't pled. If it was pled in this complaint that the officer fabricated evidence or intentionally misled, then it would be a different situation. What if he was recklessly disregarded? Even that's not good enough anymore, Your Honor. Not pled in the complaint? Not clearly, but... Taking the allegations of the complaint as true, which we're required to do on a 12B6? No, I'm saying even assuming that was pled, that's not enough under the law. Under this Court's decision in the Kelly case and also more recently the Carter v. Gore case, this Court ruled that reckless misstatements are too close to negligent misstatements, and it's too hazy, the distinction between the two, and so that won't defeat qualified immunity anymore. So even if he had pled that, I don't think it would save him. I think what you're left with to defeat arguable probable cause is either an affidavit that is completely conclusory, meaning that John Doe committed the crime of theft with no supporting facts, which is not here, or somewhat completely conclusory in the charge. For example, the Lumpkin case where the woman from Atlanta was just trying to get in her driveway and she was charged with obstruction of justice, and the major, the officer there that submitted that affidavit was reprimanded. The major said, how could she be charged with obstruction of justice for trying to get in her own driveway? So those are the types of things that are completely conclusory, but... What happened to the other citrus hauling trailers? These plaintiffs purchased 37. Donald Mosley said 80 of them were stolen. What happened to the others? I'm not aware, and I don't know that that's part of the pleadings, Your Honor. I would only say that Judge Lazare observed that that's quite a large percentage, almost half of the stolen trailers going to the same place. What do we do with Mr. Mosley's statement that none of these plaintiffs knew these were stolen? Well, two things, Your Honor. First, as Judge Lazare observed, it doesn't necessarily have to be the gospel. You don't have to agree with it. But secondly, to me, I read that statement as not being exculpatory at all. I mean, the fact that Mr. Mosley said that he took them there and they bought them, well, for the one charge of improperly buying property without getting the proper paperwork done, that proves part of the crime. That's not exculpatory at all. Let me tell you what troubles me. Without discovery, how can we be sure that these are really vehicles and not scrap metal? Well, I guess it is not that that we're trying to look at. We're trying to look at the affidavit. And the affidavit is not going to change through discovery. And the other thing I'd like to stress, Your Honor, is that if you look at that affidavit and also the additional submission that the appellants provided of Mr. Mosley's statement, those things do show at least arguable probable cause. And if qualified immunity is worth the papers printed on, it has to be decided early. And I've cited those cases in there that for qualified immunity to work, it's immunity to the process, not just immunity to damages. We usually decide that at the summary judgment stage, though, don't we? I understand. But I will point out that the cases out of this circuit do say it should be decided as early as possible. There's plenty of precedent that's done on a motion to dismiss 12B-6. And in this case, since all we're doing is examining the affidavit, Your Honor, that's not going to change. Mr. Mosley's statement, even taking that as true, that all I do is bring them in and they buy them. Well, it would change if there's relevant information that was left out of the affidavit. And it was left out of the affidavit intentionally by the officer. We don't know that. Because it wasn't pled. They didn't plead a fabrication. If they had pled in their complaint that this officer knew of exculpatory evidence and didn't put it in there, or if they put in there that this officer perjured himself, it'd be a very different situation. Then you would be in the Kelly versus Curtis type case, Your Honor. But we don't have that here. That wasn't pled, nor was there any pleading of a conclusory affidavit. The only thing that was pled was that there wasn't enough information put in there. All right. I'll have to look at the complaint again. But if they pled that there was material facts that were recklessly left out, would that be enough? No, it would not. Not under Carter v. Gore and the Kelly case before it. Reckless misstatements are too close to negligent misstatements. And the line is too hazy, this court has held, to defeat qualified immunity. If I look at the affidavit, what in there tells me that McCulley or Richmond knew that the trailers were stolen? Because I can't find anything in the affidavit that reflects where he says they knew these were stolen trailers. Well, they don't have to prove that they were stolen trailers. All he has to do is prove that these vehicles were purchased without appropriate paperwork being done. Now, you're correct as far as the charge for grand theft. If, in fact, they were purchased as trailers and not as scrap metal. Right. All you have to prove under the statutory crime for improper purchasing is that they didn't provide evidence of title or evidence of salvage or, as Judge Talma pointed out, the other certificate. I understand that. But if they thought they were purchasing scrap metal, then they didn't need all that. Right? Right. If they thought that they were purchasing scrap metal, no, I think there still has to be some title work for that, Your Honor. To purchase scrap metal? I believe so. And, you know, I'll point out this. Your Honor, specific intent is not something that the officer is required to prove. And I'll point the court towards this Court's decision in Rhodes v. Collar because this was one of the things that the appellant was talking about. How did they know that they knowingly did this? Well, that's not something the officer is required to prove. He's not required to prove in his affidavit for arguable probable cause the intention of the malefactor. He knew that a large percentage of trailers were going through this place. He knew all of those trailers did not have any of the statutory paperwork that was required. He heard the statements from all of the defendants say that refer to them as trailers. He saw photographs of the trailers and made a determination that these were not scrap as they were referred to. And, you know, Your Honor, the other thing, the affidavit signed off by a state attorney, an arrest warrant issued by a state judge, all of these things point to at least arguable probable cause in this case, Your Honor. The state attorney there obviously felt she had a good enough case to take Mrs. McCulloch to trial. She lost, but she felt that it was a good enough case to take to trial. And so obviously, Your Honor, the officer doesn't have to prove the case in his affidavit. That's for the state attorney to decide if they want to prosecute. In this case, one of the defendants, they decided not to prosecute, but that's not for the officer to decide. And it is for the jury to decide on guilt. So, yeah, I think I've discussed everything that I'd like to discuss, Your Honor. But if you have any further questions about this, I would also like to point out that the argument that Judge Lozera made improper inferences, I think that was addressed. But Judge Lozera was doing what he was supposed to do, which was decide whether the officer could have reasonably believed there was probable cause there. He wasn't making any type of inference as to the allegations of the complaint. He was looking, as he should have, at the affidavit itself. Counsel, I do have one minor question. In regard to the actual affidavit in support of the application for the arrest warrants, one of them is labeled Composite Exhibit A, and the other one has a CF13-005969 number in the lower right-hand corner. There are some initials in the upper right-hand corner of those two exhibits. Are those the initials of the assistant state's attorney who reviewed and approved it? And how do we know that on a 12B6 motion? I don't, you know what, I don't think we can, other than I know the plea affidavit was filed. Understand also the plea affidavit was done months after the arrest affidavit was done, so I don't know what relevance. So that's not going to help us with the qualified immunity analysis, is it? Not really. It has the prosecuting attorney, state attorney, on that plea affidavit. So, I mean, unless you wanted to match up her initials to her name on that, it would be difficult. Okay. I think the answer to my question is we don't know. Yeah, I think that, unfortunately, is not something you can take from the four corners of the complaint. Okay. Thank you. Thank you, Mr. Trone. Mr. Moritz. Your Honors, in page 67 of the 115-page appendix at the bottom, there's the vignette between Mr. Mosley and the detective who's interviewing him. And the detective challenges Mr. Mosley and says, I've looked at the records and they're very incomplete. And he says, honestly, he's got to know what's going on here, talking about the TNM personnel. And Mosley says, yes, sir, in terms of I hear what you're saying. Then says, but when I look at the records and I look at how they were taken, there's 47 dozen red flags flying. Okay. So what's his involvement here? None. They doesn't know nothing about it. I just bring them in there and they buy them. And again, Judge Bazzaro says that the deputy is not required to accept as true the statements of a thief. And I think he's entitled to. However, the recklessness becomes apparent from that very act because they started an entire investigation and rely on him to bring these charges, but then they disregard the exculpatory content. That's the recklessness where he admitted that from the gatekeeping function of the judge who would have wanted to know your star witness, you're going to put them under oath as exculpating them from all criminal center. Let me ask you this now. Arguable probable cause can be defeated if the officer intentionally left information out of the affidavit or recklessly disregarded truthful information or recklessly disregarded information to taint the affidavit. But Mr. Trone says, well, that wasn't pled in your complaint. I don't have your complaint in front of me now. Did you plead that in the complaint or not?  Let me just find it, please. One of the counts that we pled in the 1983, paragraph 47 doesn't say exactly that way, but it says, looking at the case law, says that based on the facts and circumstances within Defendant Detective Jones's knowledge, assuming he had reasonably trustworthy information would not cause a prudent person to believe under the circumstances shown that the plaintiff, in this case, Ms. McCauley, had committed or was committing an offense. When we go back into the facts, we know, for example, we pled in paragraph 36 with respect to Mr. Richman, we said that Mr. Richman and Mr. Powell had all of their charges. Mr. Powell, we don't represent, but he was the person who received the property. Despite a complete lack of evidence that Mr. Richman made management decisions, interacted with the trailer thieves, or in any way colluded to commit criminal acts, detectives included him as a defendant. Judge, that is a very specific fact. It may not say the words reckless, but that's what I was coming back to earlier. You think that's enough? It is. Because the reason it is, is because these are readily available facts. You have to establish the basics. There is no role identification. There's no distinctions. They use the same affidavit for all of them. When I read your complaint, it says that the detective should not have concluded that there was arguable probable cause. But I don't see anything that says he intentionally or recklessly left anything out. Well, what I would say about that is this, Your Honors. If we left that out, then we are in a conundrum. Because as an officer of the court, for me to just throw it into a complaint, if I don't know it, just so I can get to the next step, that's not what Iqbal and Trombley contemplate. They contemplate that I'll plead what I know. You'll take the case and alight most favorably, my very best case. But it has to be a plausible inference from facts that are alleged in the complaint. And I don't see facts sufficient to support that plausible inference based on the language of your complaint. The language of the complaint specifically shows the specialized knowledge, too. That's another key factor of Detective Jones. He's not just a patrol deputy. He was training people about this. So he knows what he needs to show. And if he doesn't put it in the affidavit, a person of his reasonable stature, knowledge, and training should have put these details. This is not... Is your theory now negligent investigation? No, it's not a negligent investigation theory. He left these facts out when he knew he should have put them in there. You can reasonably infer that from the way we pled the complaint. We've pled knowledge about special training. We've pled that it caused significant injury. And we've pled the outcome. I mean, I know that the outcome doesn't drive the analysis. But Judge Wilson is right that the reality is we should be entitled to do discovery. Qualified immunity never goes away, even after a jury could find liability for these defendants. So it's not like at the 12B6 stage that they're being deprived of any fundamental right. My clients, however, are being deprived of their fundamental right to have their best case taken and plausible inferences drawn. The reason why this court, just so we go back to recent decisions, just on April 24th, Sears v. Roberts, this court reversed because at summary judgment, the court sat there and disregarded the affidavits of the plaintiff and completely construed things in a light most favorable to the officers. That is consistently this court's jurisprudence. About six years ago, I argued in front of the court in a dog bite case. The plaintiff asserted the dog bit him for seven minutes straight. One of the sitting judges said, I doubt it was actually that long, but I'm sure it felt that long. But taking the plaintiff at their best case, we're going to believe that that's what happened at this stage. And the court, in a published opinion, reversed the district court's grant at summary judgment. We're not even at summary judgment. We're at the basic pleading stage. And we could always amend our complaint as we come into more knowledge. It's hard to attack an individual and just call them reckless. There's serious omissions that a person with his training and knowledge should not have allowed to happen. And under Franks v. Delaware, we have the conundrum that when he left out Mosley, Frank says, we'll extract the offending information. Well, we can't extract an omission. We have to get it in front of the gatekeeping judge because if the judge had seen that the person they're relying for their investigation on had actually said they didn't do it, then that is recklessness on its face. We don't have to plead reckless for that to be obvious from the pleadings. We have your case, Mr. Maddox. Thank you. Thank you very much, Your Honor. Thank you. The next case is the United States.